MUELLER SPORTS MEDICINE,
INC., Plaintiff,

v.

SPORTSTAR ATHLETICS,
INC., Defendant.

No. 04 C 0700 C.

United States District Court,
W.D. Wisconsin.

Sept. 7, 2005.

---

Allen A. Arntsen, Foley & Lardner LLP, Madison, WI, for Plaintiff.

Robert M. Bowick, The Matthews Firm, Houston, TX, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil case brought by plaintiff Mueller Sports Medicine, Inc. against defendant Sportstar Athletics, Inc., in which plaintiff alleges that defendant has been infringing plaintiff's U.S. Patent No. 4,719,909 by making, using, selling or offering for sale under eye devices that embody one or more claims of the '909 patent. Plaintiff makes and sells under eye devices according to the claims of the '909 patent that are marketed as "No Glare Strips"

and used by athletes to reduce eye glare during competition.

With trial set to begin on Monday, September 12, the parties have filed a number of motions. Plaintiff has asked the court to exclude evidence or argument that the claims of the '909 patent are indefinite; defendant has asked for judgment as a matter of law on the issue of indefiniteness under 35 U.S.C. § 112, ¶ 2 and for a judicial construction of the claims 1, 3 and 7 of the patent. Although the motions are not thoroughly briefed, the briefs that have been filed are sufficient to allow a ruling on the pending motions. (Plaintiff's brief in support of its motion to exclude evidence on the alleged indefiniteness of the '909 patent addresses the same legal issues as defendant's brief in support of its motion for a judicial determination that the '909 patent is indefinite as a matter of law and the opposing briefs on claim construction address the indefiniteness arguments.) Plaintiff opposes defendant's late filed request to move for judgment on indefiniteness, arguing that it is far too late to be raising an issue that should have been raised before the time for filing motions for summary judgment had expired. Plaintiff makes a good point, but the issue is a straightforward one and its resolution will simplify the task for trial. Because I am resolving it in plaintiff's favor, plaintiff is not prejudiced by the late filing.

The language at issue is contained in independent claim 1 and dependent claims 3 and 7. The first section in dispute provides:

a replaceable pliable sheet material patch having a first face for generally conformable application to the skin area on the zygomatic arch along the lower side of the orbit of a user, said patch being of sufficient extent to substantially cover the skin area on the zygomatic arch when applied to said skin area.

The second area of controversy is contained in the third sub-paragraph of claim 1, which recites

a light absorbing surface on a second face of the patch for absorbing incident light rays directed toward said skin area; said light absorbing surface being dark in color to reduce glare by substantially preventing light from reflecting from said skin area of the zygomatic arch toward the eyes of the wearer, said light absorbing surface being resistant to running caused by perspiration.

■ Defendant contends that the first section must be construed to cover the entire zygomatic arch, which is the arch of bone extending from the cheekbone to the side of the skull just in front of the ear, in other words, the whole of the cheekbone, including not only the under-the-orbit portion shown in Fig. 1 of the patent specifications, but also the portion of the cheekbone on the side of the face. Alternatively, defendant contends, the section must be found indefinite as a matter of law because the term "substantially cover" is not sufficiently precise to tell the person of ordinary skill in the art what he must do to avoid infringement.

Defendant's suggested construction makes no sense. Although defendant argues that the court should look to the dictionary definition of zygomatic arch, which would lead to the conclusion it proposes, the claim language, the specifications and common sense militate against doing so. The inventors claim an "under-eye" device; a patch extending beyond the eye would not be an under-eye device. The claim itself specifies that the patch is to be applied to the skin area on the zygomatic arch "along the lower side of the orbit of the user." '909 Pat., col. 3, lns. 54–55. Also, the device is designed to prevent light from reflecting from the skin area to the wearer's eye; a side patch would be unlikely to fulfill this purpose.

The specifications start with Fig. 1, which shows a small kidney bean-shaped device located right under each eye of the wearer. Although defendant argues that "a figure cannot be relied upon for the precise dimensions of a claim limitation," Dft.'s Br., dkt. # 39, at 2, and cites *Hockerson–Halberstadt, Inc. v. Avia Group Int'l*, 222 F.3d 951, 956 (Fed.Cir.2000), in support of its argument, *Hockerson–Halberstadt* is easily distinguishable. In that case, the court held that the patent drawings could not be used to determine measurements where the claims referred to quantitative relationships among the components of a particular device and the specifications were silent on the same relationships. "[I]t is well established that patent drawings do not define the precise proportions of the elements and may not be relied on to show particular sizes if the specification is completely silent on the issue." *Id.* The court noted that "figures in a patent are not drawn to scale unless otherwise indicated." *Id.* In other cases, however, the Federal Circuit has approved the use of patent drawings in understanding the claims of a patent. *See, e.g., CVI/Beta Ventures, Inc. v. Tura LP,* 112 F.3d 1146, 1153 (Fed.Cir.1997) (holding patent drawings highly relevant to understanding claims). *See also Phillips v. AWH Corp.* 415 F.3d 1303, 1315 (Fed.Cir.2005) (holding specification highly relevant to claim construction analysis). Even if the claims left any doubt about where the patch is to be placed, the specifications would eliminate the doubt.

Finally, common sense and experience dictate construction of the claimed patch as one that is applied to the bony (zygomatic) arch immediately below the eye. The reason that athletes use using charcoal and other materials to black out that section is because it is the area from which light can reflect back into the athlete's eyes.

■ As to the second area of controversy, relating to the glare reduction requirement, defendant argues that the claim should be construed as requiring a black patch and one that is intended to be used primarily for the purpose of reducing glare to improve sight. Plaintiff counters by pointing out that nothing in claim 1 or the specifications requires an entirely black patch or even one that is mostly black. The claim provides for a surface that is "dark in color." Col. 3, ln. 68. It does not specify black as the "dark color." Dependent claim 7 adds the limitation: "wherein said light absorbing surface is black." If independent claim I were interpreted as requiring a black patch, claim 7 would be superfluous and would not have been approved by the examiner.

■ Plaintiff denies that the patent requires patches that improve the user's eyesight. Plaintiff is correct. The patent claims a patch that substantially prevents light from reflecting from the zygomatic arch toward the wearer's eyes; it says nothing about improving sight. One would expect that sight would improve if protected from glare, but this is not a claim requirement.

Accordingly, for claim construction purposes, "substantial coverage" means a patch large enough to cover the skin area on the zygomatic arch when applied to said skin area; "substantial" means "largely, but not necessarily wholly, that which is specified," *LNP Engineering Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1354 (Fed.Cir.2001), or approximately the same size as the patch shown in the patent drawings. In the third section of claim 1, "said skin area of the zygomatic arch" is the area under the eye; "substantially" preventing reflected light means, again, "largely, but not necessarily wholly, that which is specified." "Wherein said light absorbing surface is black" is construed to mean a patch that includes a black light-absorbing surface.

■ Having construed the claims, I find no problem of indefiniteness. The substantial coverage limitation is definite enough to give clear warning of what constitutes infringement; the reference to the zygomatic arch *along the lower side of the orbit of a user* is clear; the patent gives sufficient guidance for determining how much coverage is "substantial" as I have explained and the patent makes it clear that preventing light from reflecting into the eyes of the user will follow if the patch is about the same size as the one pictured in the specifications, dark in color and have a non-reflective surface to reduce glare.

## ORDER

IT IS ORDERED that plaintiff Mueller Sports Medicine, Inc.'s motion to exclude evidence or argument regarding the alleged indefiniteness of the claims of the '909 patent is GRANTED; defendant Sportstar Athletics Inc.'s motion for leave to file a motion for judgment concerning indefiniteness is GRANTED; defendant's motion for judgment regarding indefiniteness is DENIED; and the claims are construed as follows:

1. "Substantial coverage" means a patch large enough "to cover the skin area on the zygomatic arch when applied to said skin area";

2. "Substantial" means "largely, but not necessarily wholly, that which is specified," or approximately the same size as the patch shown in the patent drawings.

3. In the third section of claim 1, "said skin area of the zygomatic arch" is the area of the zygomatic arch under the eye;

4. In the third section of claim 1, "substantially" preventing reflected light means "largely, but not necessarily wholly, that which is specified."

5. "Wherein said light absorbing surface is black" means a patch that includes a black light-absorbing surface.